Filed 7/9/26  P. v. Miranda CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085839 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD304205) |
| JONATHAN INDA MIRANDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Jonathan Inda Miranda of assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)) and found true allegations that he personally inflicted great bodily injury (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)).  The court found true that Miranda had a 2012 juvenile adjudication that was a strike (§§ 1203, subd. (e)(4), 667, subds. (b)-(i), 1170.12, and 668).  It denied Miranda probation, denied his request to strike his strike conviction and imposed a six-year term: the three-year midterm doubled for the strike.  The court struck the punishment for the great bodily injury allegations.  It awarded Miranda 36 days of credit (32 actual days and four section 2933.1 credits).  It ordered Miranda to pay a $40 court operations assessment (§ 1465.8), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $1,800 restitution fine under section 1202.4, subdivision (b).  The court suspended another $1,800 fine under section 1202.45 unless Miranda's supervision was revoked.

Miranda's appointed appellate counsel has filed an opening brief raising no arguable issues pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*).  We invited Miranda to file a supplemental brief on his own behalf, but he did not do so.  Having independently reviewed the entire record for error as required by *Anders* and *Wende,* we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2024, R.A. was working as an Amazon delivery driver and heading downtown to do a delivery.  His girlfriend, C.L. was in the passenger seat of the car, accompanying him.  As R.A. was getting close to a light, a car cut him off, and R.A. honked at it.  The other vehicle started slowing down and "brake-check[ed]" him.  R.A. and C.L. saw the driver, who they identified

---

[1]     Subsequent statutory references are to the Penal Code.

2

as Miranda, staring at them through his side mirror. R.A. was in a hurry to make his deliveries, so he passed the other car and headed to the apartment complex that was his destination.

R.A. parked his car in a driveway area and saw another vehicle pull up into the parking garage. As he was asking C.L. if it was the car that cut him off, R.A. saw Miranda walking towards them. Miranda said something, staring directly at him. R.A. exited his car and heard Miranda say, "What the fuck." R.A. walked toward Miranda and the men argued about why R.A. honked at Miranda, R.A. explaining that Miranda had cut him off. R.A. said he was there to do deliveries, but Miranda said "Fuck you," and punched R.A. in the jaw. Miranda swung at R.A. first. C.L., who had also exited the car, saw Miranda hit R.A.. R.A. tried to throw a punch back, but Miranda lunged forward and started attacking R.A., hitting him in the head, nose and mouth. R.A. then grabbed Miranda's shirt, and the men fell to the ground. Miranda got on top of R.A. and was hitting him in the head, ribs, and back. R.A. tried to get away and back up, but was dazed. Miranda again approached him and hit R.A. again in the face, causing him to lose consciousness, but R.A. regained consciousness and was able to get up only to have Miranda start hitting him again. R.A. felt a hard blow to his leg and he buckled and fell to the ground, defenseless, with Miranda "upper cutting" him in the left eye multiple times and "everywhere." Miranda finally stopped and said, "You're lucky that I wasn't even that mad," walking back to his car. C.L. estimated that Miranda hit R.A. more than 20 times.

C.L. called 911 and took R.A. to the emergency room. He had a broken nose, a broken left eye socket, a fractured leg, and four broken ribs. He underwent surgeries and was hospitalized for five days. C.L. did not see R.A.

3

lunge at Miranda before Miranda punched him. A responding detective did not see any apparent injuries on Miranda on his arrest about a month later.

A surveillance camera caught the two vehicles in the parking garage, and a portion of the altercation. On viewing the video, R.A. agreed he walked up to Miranda and most of what happened occurred after he had approached Miranda. R.A. agreed he had told officers that Miranda exited his vehicle cussing at him, they argued, and the fight ensued. R.A. also testified that he did not remember everything he had told officers.

Miranda's wife and sister testified that as Miranda was driving them and Miranda's niece back from church that morning, it was R.A who suddenly cut them off and honked at them as he drove around them. Miranda's wife characterized both R.A. and C.L. as looking "very angry" and "very aggressive." She testified that R.A. approached Miranda and put himself in a fighting stance, with his fist out and one leg behind the other. Miranda's sister stated that Miranda was trying to avoid the fight, that R.A. wanted to fight, and R.A.'s girlfriend, who was cursing at her, was encouraging her boyfriend to fight. Miranda's wife claimed both R.A. and Miranda were fighting, and Miranda was stepping away, with R.A. going toward him. According to Miranda's wife and sister, after the fight, Miranda apologized and told the man he was not trying to fight and was sorry. Miranda's wife denied that Miranda ever walked towards R.A., but she believed Miranda's punches on R.A. "were landing." She admitted Miranda did not have any injuries from the incident, and she did not call the police to report what she saw.

## DISCUSSION

As noted above, appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in

4

compliance with *Anders*, *supra*, 386 U.S. 738, counsel has identified one possible issue that this court considered in evaluating the potential merits of this appeal. Counsel asks "[w]hether the evidence sufficiently supported the conviction or did it alternatively support a finding of self-defense."

We have reviewed the entire record as required under *Wende* and *Anders*, and considered the potential issues raised by Miranda's appointed counsel. We hold substantial evidence supports Miranda's conviction. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028 [holding it "well established" that "the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' "].) This court does not reweigh conflicts in the evidence or assess witness credibility in assessing the sufficiency of the evidence. (*People v. Zaragoza* (2016) 1 Cal.5th 21, 44 [it is not the reviewing court's task to "resolve credibility issues or evidentiary conflicts," in resolving a sufficiency of the evidence challenge "nor is it to inquire whether the evidence might reasonably be reconciled with the defendant's innocence"].) " ' "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." ' " (*People v. Oyler* (2025) 17 Cal.5th 756, 827-828.) There are no other arguable issues that would result in a reversal or modification of the judgment. Competent counsel has represented Miranda on this appeal.

DISPOSITION

The judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.